# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
      **Plaintiff,**

    **v.**                                     **Case No. 06-CR-82**

**THOMAS DICKMANN**
      **Defendant.**

---

## SENTENCING MEMORANDUM

The government charged defendant Thomas Dickmann with participation in a conspiracy to distribute more than 500 grams of cocaine. 21 U.S.C. § 841(b)(1)(B). Defendant's role consisted primarily of accompanying or running errands for another member of the conspiracy, for which he was usually compensated with cocaine, most of which he used himself.

Defendant pleaded guilty to the offense, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing, which set defendant's offense level at 27 (base level 30, U.S.S.G. § 2D1.1(b)(5), minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at IV, producing an imprisonment range of 100-125 months.

Neither side objected to the PSR, but defendant moved for a horizontal departure from his criminal history category under U.S.S.G. § 4A1.3(b)(1) and a non-guideline sentence of 60 months under 18 U.S.C. § 3553(a). The government advocated a term at the low end of the applicable guideline range. Upon consideration of the arguments of counsel and the entire record, I granted defendant's motion and imposed a sentence of 78

months.  In this memorandum, I set forth the reasons for the sentence imposed.

## I.  SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005).  First, I determine the advisory guideline range, resolving any disputes necessary to that determination.  Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements.  Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a).  E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## II.  DISCUSSION

As noted above, the parties agreed with the PSR's guideline recommendation. Therefore, I proceeded to consider defendant's requests for a departure and a non-guideline sentence under § 3553(a).

## A.     Departure

Although the guidelines are no longer binding after Booker, the court must still consider them, 18 U.S.C. § 3553(a)(4), as well as the policy statements promulgated by the Sentencing Commission, § 3553(a)(5).  This includes the Commission's statements regarding departures.  See Peralta-Espinoza, 413 F. Supp. 2d at 974 n.2 (noting that although the Seventh Circuit now views departures as irrelevant in determining the reasonableness of a sentence on appeal, district courts may continue to consider "traditional" departures).

On such policy statement is § 4A1.3.  That provision provides: "If reliable information

2

indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1).

I have identified various relevant factors in ruling on a request for departure under this provision. They include the age of the prior offenses; the defendant's age at the time he committed them; whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol; the circumstances of the defendant's prior convictions, i.e. whether they were petty or non-violent; the length of the prior sentences; what was going on in the defendant's life at the time he committed the prior offenses; and the closeness in time of the prior offenses, i.e. whether they were they part of one "spree" interrupting an otherwise law abiding life. United States v. Chamulak, No. 06-CR-24, 2006 U.S. Dist. LEXIS 80252, at *7-8 (E.D. Wis. Nov. 1, 2006) (citing United States v. Eisinger, 321 F. Supp. 2d 997, 1006 (E.D. Wis. 2004)).

I found a departure appropriate in the present case. Defendant had three "scored" offenses: possession of cocaine, for which he was sentenced to one year probation with sixty days jail; theft, for which he was sentenced to two years probation, which was later revoked and a sentence of nine months imposed; and retail theft, for which he received a fine in municipal court. All of these offenses were clustered in 2002, a period of time in which defendant's life fell apart and his drug use spiraled out of control. Further, the offenses were all non-violent, possession and petty theft cases typical of an addict's attempt to get money to buy drugs. See, e.g., United States v. Lacy, 99 F. Supp. 2d 108, 119 (D. Mass. 2000) (departing where the defendant's record was "largely non-violent, and relatively minor, the kind that characterizes an out-of-control addict"); United States v.

3

Hammond, 37 F. Supp. 2d 204, 205 (E.D.N.Y. 1999) (departing from category VI to III where the defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics"). The second theft case scored 2 criminal history points only because defendant's probation was revoked, but the revocation was due to continued drug use rather than new and unrelated criminality. He received 2 more points because he committed the instant offense within two years of his release from jail on the revocation sentence, U.S.S.G. § 4A1.1(e), but once again drug addiction fueled his involvement in this conspiracy. I did not suggest that drug addicts are not responsible for their actions, but, as discussed later in this memorandum, defendant's record suggested that he could follow the law and behave in a pro social manner when sober. Finally, none of the prior sentences exceeded nine months, defendant had never been to prison, and, as noted, all of the priors were simple possession or minor theft cases. Therefore, I found that category IV substantially overstated the seriousness of defendant's record. I further found that category IV overstated the likelihood that he would re-offend, if he addressed his drug use.

Defendant asked me to depart to category II, but that would have depreciated his record. I instead departed to category III, which better reflected the seriousness of his previous criminal conduct. I proceeded finally to imposition of sentence under § 3553(a).

**B.      Section 3553(a)**

In imposing sentence, the court considers the factors set forth in § 3553(a):

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

4

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### 1.     Nature of Offense

Defendant was involved in a cocaine distribution conspiracy headed by Mark Cubie, which moved a large amount of cocaine. However, his involvement was rather limited and stemmed largely from his own cocaine addiction. Defendant's role was essentially to accompany Peter Santoya, another conspiracy member who lived nearby, when Santoya picked up drugs from Cubie, or to act as a courier for Santoya, delivering money or picking up drugs. In exchange, defendant received cocaine and sometimes cash. It did not appear that he engaged in much if any street dealing, but rather hung around other dealers and assisted them in order to feed his own drug addiction. Nor was there any evidence of

5

violence or weapon possession on defendant's part. Therefore, the offense was mitigated.

### 2. Character of Defendant

Defendant was thirty-eight years old and the most significant aspect of his background was his strong drug addiction. It appeared that he had struggled with drug use for many years, interspersed with periods of sobriety. His criminal and employment record tracked his drug use.

In 1990, defendant was twice convicted of marijuana possession. However, in 1994, he married, had a child, worked and stayed out of trouble until 2002 when his drug use again spiraled out of control. He lost his job of six years in 2000 and the following year his wife left him, taking their child back to her native Austria contrary to a court order. In 2002, his criminality recommenced with convictions for cocaine possession and theft. It appeared that his theft convictions stemmed from his need to obtain drugs. In 2002, he started using crack, escalating to daily usage and, as he told the PSR writer, things "began falling apart." He attempted treatment in 2003 and was sober for a time, but then re-involved himself with Santoya, leading to the instant indictment. He was again arrested with cocaine after his indictment and release in this case, leading to remand.

The record suggested that defendant could be a productive member of society. From 1994 to 2000, he worked and supported his family. Prior to that he served in the Navy and obtained his GED after he had previously dropped out of high school to join the service. The major impediment was his drug use, which he had not been able to get under control, despite previous periods of treatment.

6

### 3.    Purposes of Sentencing

I saw no evidence that defendant was dangerous, and if he could get his addiction under control, he did not pose a significant risk of recidivism. However, there was a need for a period of confinement to promote respect for the law and deter others, given the damage drugs cause to the community. Defendant obviously had substance abuse treatment needs, but given the nature of the offense and defendant's inability to deal with those needs in the community, I had to initially address them via recommendations to the Bureau of Prisons.

### 4.    Guidelines

The guidelines called for a term of 87-108 months after the departure. Under all of the circumstances, I found that a sentence a bit below the range sufficient to satisfy the purposes of sentencing. The guideline range was high based on the amount of cocaine involved. However, as discussed, defendant did not personally deal large amounts. Rather, for the most part, he just rode along with, or ran errands for, Santoya. At times, he may have placed other area dealers in contact with Cubie to obtain drugs. Essentially, he hung around this conspiracy in order to meet his own drugs needs. Thus, his role in the offense was mitigated.

Defendant also had strong family support, despite his ups and downs. They recognized that defendant needed to be separated from his criminal associates and undergo substantial treatment, and were willing to help him when he emerged. Their help would assist in his re-integration and reduce the likelihood of recidivism. I also received a letter from defendant's brother-in-law, a psychologist, who recommended a period of

7

incarceration to allow defendant to dry out and get treatment. The letter also indicated that defendant was remorseful and motivated to change, sentiments defendant echoed in his sentencing allocution.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 78 months sufficient but not greater than necessary. This sentence adequately addressed the mitigating factors discussed, while still providing for just punishment and deterrence. Because it varied only about 1 level from the guidelines after the departure and was based on the specific facts of the case, it did not create unwarranted disparity.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 78 months, with a recommendation that he participate in any drug abuse treatment programs available, including the 500 hour residential program. Upon release, I ordered him to serve a four year supervised release term, with a drug aftercare condition  Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

8